GLADNEY, Judge.
This action was filed by Henry Louis Skinner against Charles M. Poston, to recover damages for personal injuries received when a gasoline delivery truck driven by Skinner ran off state highway Number 403 in Vernon Parish and was overturned. The accident was allegedly caused by negligence on the part of the driver of defendant’s wood truck in crowding plaintiff off of the highway on a downgrade curve. The defense avers that the driver of defendant’s vehicle was not guilty of any negligence and,- in the. alternative, interposed pleas of contributory negligence and the last clear chance doctrine.
*703 After "a trial, judgment 'was rendered rejecting the demands of plaintiff. Assigning written reasons for the decision the trial judge determined the accident was primarily due to an attempt by. plaintiff to negotiate a dangerous portion of the highway while driving a heavily loaded truck at an unsafe rate of speed. He also reached the conclusion defendant’s .driver was free from negligence. In brief and argument counsel for appellant' have attacked the soundness of the judgment, generally in that it held plaintiff at fault and, particularly because of the court’s reliance upon the testimony of J. F. Robinson, Jack Patton and Ernest Dunlap, witnesses for defendant. Further error by the trial judge is charged in admitting over counsel’s objection the testimony of John Whiddon, a state police officer, who was permitted to express his opinion that at the time the truck left the highway it was traveling at a rate of speed of not less than forty miles per hour, and that plaintiff did not apply his brakes.
A correct resolution of the case must be found in factual issues concerned with the locus where the two vehicles involved passed each other, the speed of the gasoline truck as it approached the scene of the accident, and the credibility of certain witnesses upon whose testimony the judgment of the trial court was largely predicated. .
Defendant caused a survey of 3,000 feet of the highway to be made by R. V. Leone, a registered surveyor, who from the factual data obtained, has prepared an exhibit which depicts a drawing to scale referred to as a horizontal alignment of the section of the highway so surveyed. Also is included a chart indicating in profile the vertical contour of the road with designated points or stations. Incidentally, we may say at this point that the correctness of the-exhibit has not been challenged. The stations, one hundred feet apart, begin with station designated 80 at the highest point upgrade on the highway and from this point westerly downgrade stations are numbered consecutively to station 110, the distance between stations 80 and 110 being 3,000 feet. Oriented upon the drawing-and chart is the curve along said highway which lies between station 92.226 and station 95.339, a''distance of 311.3 feet.- Leone testified that the curve was approximately a 10% curve indicating amare of 31 degrees with deviation of 8.72 feet to each 100 feet. ■ The mid point of- the curve occurs at station 93.70. Of special significance is the fact that Leone made the survey when the imprint of the tires of the gasoline truck was still visible upon' the soft shoulders of the untraveled portion of the highway. We are thus able to determine accurately from the exhibit that the tires of the truck went off the graveled portion of the highway at station 95.06 and continued, straight about 40 feet before turning towards the outside edge of the right-of-way. , From the exhibit we can also determine that from west to east the elevation between station Í10 and station 80 rises approximately 110 feet,, and that such rise is interrupted by a dip in the highway between stations 91 and 88.
.In the early forenoon on December 28, 1951, with weather clear and the road surface dry, Skinner was driving the truck of his employer, Van Vines, along State Highway No. 403, westerly from Hornbeck towards Pisgah, when about two miles west of Hornbeck he entered that portion of the highway surveyed by Leone. As Skinner passed station 80 above referred to, he traveled downgrade along a graveled highway for a distance of 725 feet, during which there was a drop in elevation of 38 feet. Arriving at station 87.25 the road through the next 450 feet had a rise of 7 feet.' Upon-leaving station 91.75 there begins a steady decline and a motorist is proceeding downgrade when he begins to enter the curve at station 92.22. The highway continues to decline and has a loss of elevation of 34 feet between stations 92.22 and 95.06 at which latter point the right tires of the truck left the-graveled portion of the highway, and during the next 40 feet west of station 95.06 there is a drop of 3y2 feet. We thus discern that from the beginning of the downgrade Skinner traveled downgrade for 725 feet at a rate of' decline of 5.4%, then during the next 450 feet he encountered a-rise of 7 feet, after which the highway dropped precipitately at the rate of *704 7.62%. Other facts disclosed by the exhibit show that at or near the, scene of the accident the highway was not banked and its outside shoulder was, from .4 to .6 of a foot lower than the center of the highway. The graveled portion of the roadway was approximately 22 feet in width and the out-sidé shoulder was only 4'feet .wide.
Another important factor for consideration, it seems to us, is the weight of the vehicle plaintiff was driving. Skinner was driving a 2% ton Ford gasoline, tank truck.' It contained its maximum load of 770 gallons :of gasoline and, in addition, was carrying some 60 or 70 gallons of lubricating oil. Inasmuch as it was testified that gasoline has a weight, of 7 pounds per gallon, obviously the load carried by the truck was 5,000 pounds or greater.
Skinner testified that when he first saw the pulpwood truck he was driving about 20 miles per hour, at which time the latter vehicle was some 250 feet away. He said he could not remember if he was using the dog gear but was traveling on the extreme righthand side of the highway. He estimated the speed of the approaching wood truck at about 20 miles per hour, and noticed that the wood loaded on the truck had' shifted to the left about 1% feet. He testified Patton, the driver of defendant’s truck, was traveling in the middle of thfe highway and did not give way. This, he asserts, caused him to leave the graveled portion of the highway at a point where the downgrade was steep, after which he proceeded about 40 feet with his right wheels on the soft shoulder before the truck completely left the road. He declares that the passing took place in the curve some several feet before he met the truck. We quote this portion of his testimony:
“Q. About how far from the top of that hi 11, when you reached the highest point between the two grades — the one you had climbed and the one you were starting to descend — how far from the top of that hill did you meet this pulpwood truck? 'A. Around eighty or ninety feet from the top.
“Q. You .met it .eighty or ninety feet from the top of the hill ? A. Yes, sir. ..
"Q. I believe you stated that — or did you actually meet the truck and pass on by and then run off, or did you run off before meeting it? A. Í ran off of the road before'actually meeting the truck, several feet before.
“Q. You hadn’t gotten to the truck meeting it when you ran off of the road? You had not actually met it when you ran off? A. No, I was getting out of his way.”
Patton, the driver of the wood truck and Dunlap, his helper, both testified that their truck as it ascended the steep grade was traveling at a rate of speed of between 10 and 15 miles per hour; -that they were driving on their right side of the highway and passed the gasoline truck without incident in the curve. Neither of -these witnesses fixed the exact point on the curve where the passing took place. It is to be noted from Mr. Leone’s exhibit that from the point where the wheels of the gasoline truck left the graveled portion of the highway, station 95.06, it is 285.4 feet to the easternmost point of the curve, station 92.226. ■ The testimony of Skinner that he passed the wood truck 80 or 90 feet west of the top of the hill cannot be .reconciled with that of- Patton and Dunlap who say they passed-within the curve. Station 91 is 122.6 feet east of the curve which begins at station 92.226. The hill indicated in the testimony of Skinner is a small hill having a .crest at station 91-, 270 feet distant from the middle of the arc of the curve and approximately 400 feet from where Mr. Leone indicated the track imprints of the tires began on the soft por-corded this portion of Skinner’s testimony tion of the shoulder. If credibility is ac-fault may not be assessed against the driver of defendant’s .truck for Skinner would have had over 300 feet within which to bring his truck under control after passing the wood truck. Obviously, the statement is contrary to the testimony of Dunlap and Patton that they passed ,Skinner in the *705 curve, since station 91 when proceeding westerly, is reached 122.6 feet before the curve is entered. Both Dunlap and Patton testified that they passed Skinner without incident and did not know the accident had happened until they were on their return trip after delivering their load of wood at Hornbeck.
Counsel, for plaintiff point to the testimony of J. F. Robinson that immediately prior to the accident he met and passed Skinner on the top of the hill,.which point, we infer, corresponds to station 91, arguing that the testimony is unworthy of belief. Counsel assert Skinner, Patton and Dunlap all denied seeing Robinson who was proceeding in an easterly direction along the highway and it. is argued. Robinson could not have been there as the driver and his helper in the wood truck would have certainly observed Robinson after passing through, the curve onto a portion of the. road which is straight from that point east-, erly for a distance of over 1,200 feet. We are of the opinion the point is not definitely proven since we do not know whether the wood truck and gasoline truck passed near station 92, as testified to by Skinner, or near station 95, the point where the tires first left the graveled portion of the road. Nor can we ascertain with any degree of certainty the difference in speed between Robinson’s truck and the wood truck. Manifestly, if the wood truck was passed by Skinner near station 95 it would have been 700 or 800 feet behind Robinson and may have been proceeding upgrade at a' slower rate of speed than the vehicle driven by Robinson. Robinson, Dunlap and Patton testified that when observed by them plaintiff was driving at a rate of speed which they estimated at approximately 50 miles per hour. The trial court accepted their testimony and although there appeared to be minor discrepancies we find their testimony substantially corroborated by eviden-tiary physical facts.
The exact speed at which Skinner’s heavily loaded truck could have safely proceeded downgrade around the curve need not be ascertained., Certainly in attempting to solve such an equation the weight of the truck,.the contour; of the highway, the elevation of the center and sides, of the, highway. and the extent of 'the downgrade deserve serious consideration. The trial judge concluded the highway at the locus of the .accident was extremely dangerous for any motorist going either east or we.st and all of the factors mentioned above are unfavorable to the motorist who doés not use every precaution.
Error in the judgment is assigned in that John rWhiddon was permitted, after objection, to give his opinion.that from the physical facts observed Skinner did not apply his brakes prior to plunging off the highway and that his speed must have been in excess of 40 miles per hour. The evidence reveals that there were no skid marks, and few physical signs upon which an opinion as to speed could be predicated. For this reason we are inclined to agree with counsel there was not sufficient evidence upon which to predicate a qualified opinion as to the speed of the gasoline truck and that State v. Robinson, 1953, 223 La. 595, 66 So.2d 515, is appropriate authority for excluding such evidence. We note, however; the trial judge did not make any finding as to the exact speed of the Vines truck when it left the highway but was of the opinion'that based on the physical facts observed and found in the record, Skinner was proceeding at an unsafe speed. Under the circumstances even 25 miles per hour could .have ¡been excessive. Coúpled with the testimony of Patton, Dunlap and .Robinson the testimony of Whiddon was merely cumulative and we believe the admission thereof did'not in any wise result in prejudice to .plaintiff’s cause. The most that can be said of it is that the error was harmless.
We have reached the conclusion that .the sole cause of the truck leaving .the highway was the speed at which plaintiff was driving at the time he entered the curve. We are of the opinion, as was the trial judge, that the weight of evidence indicates that -Patton was driving uphill on his right side of the road at a low rate of *706 speed; Plaintiff’s charge that some of the pulp wood shifted and helped to obstruct the path of the vehicle driven by Skinner is not made out by the evidence. The only witnesses thereto, other than Skinner, were the driver of the truck and his helper, both of whom testified that the pulp wood was securely bound and had not shifted.
Though earnestly urged, we find it un-. necessary to consider the alternative plea of contributory negligence and application of the , last clear chance doctrine, as urged by the defendant.
For the reasons' hereinabove set forth, it follows that the judgment from which appealed should be and hereby is affirmed at appellant’s cost.